# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    Plaintiff,

**v.**                                                   **No. 19-cr-492 RB**

**DAVID TARANGO-ROBLES,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

Mr. Tarango-Robles (Defendant) is charged with unlawful reentry following several prior deportations from the United States. He argues that the Court should dismiss the Indictment because his underlying removal order was invalid. In the underlying proceeding, Defendant was notified that he would be required to appear before an immigration court, was subsequently notified of the date and time of his hearing, attended the hearing with his attorney, applied unsuccessfully for voluntary departure, waived his right to appeal, and was ordered removed. He now argues that this entire sequence of events violated his due process rights because the original "Notice to Appear" (NTA) lacked specific information about the date and time of the hearing. Defendant fails to show, however, that he has met the three requirements for a successful collateral attack on his underlying removal order, and the Court will **deny** his motion to dismiss.

**I.    Background**

On February 20, 2019, Defendant was indicted by a grand jury for "knowingly enter[ing], attempt[ing] to enter, and [being] found in the United States" after being previously deported on January 10, 2013, "in violation of 8 U.S.C. §§ 1326(a) and (b)." (Doc. 12.) Defendant was arrested on December 2, 2018, at a United States Border Patrol primary inspection checkpoint in Doña Ana County while attempting to travel to Phoenix to seek employment. (Doc. 18-3 at 3–4.) He told

Border Patrol agents that he had entered the United States in June 2018 "by walking across the Rio Grande River from Mexico approximately [two] miles east from the Port of Entry in Fabens, Texas." (*Id.* at 2–3.)

Though the unlawful reentry case now before the Court is based on Defendant's prior removal in 2013, his history of involvement with the United States immigration system dates back to 2005. On July 30, 2005, Defendant was served, in person, with an NTA (notice to appear) by the United States Immigration and Naturalization Service. (*See* Docs. 17 at 11; 18-1 at 2.) This NTA stated that Defendant was ordered "to appear before an immigration judge of the United States Department of Justice" at the El Paso Service Processing Center, "on a date to be set at a time to be set[,]" for removal proceedings on the charge that he unlawfully entered the United States. (*See* Docs. 17 at 11; 18-1 at 3.) On August 18, 2005, Defendant received a "Notice of Hearing in Removal Proceedings" from the Immigration Court, which included a specific time and date for his hearing the following month. (Doc. 17 at 12.) The notice of hearing was served to Defendant through his attorney. (*See id.* at 13.)

At his September 8, 2005 hearing, Defendant's application for voluntary departure was denied and he was ordered removed to Mexico. (*Id.* at 15.) He waived appeal and was deported. (*Id.* at 16.) Defendant subsequently unlawfully reentered the United States and was "subject to removal by reinstatement of the prior order" three times. (*See id.* at 17; Doc. 18-3 at 4.) In addition to his three prior removals based on reinstatements of the 2005 removal order, Defendant has been voluntarily removed seven times. (Doc. 18-3 at 4.) One of his subsequent arrests and deportations under a reinstatement of the removal order occurred in January 2013. (*Id.*) That prior removal forms the basis of his illegal reentry charge currently pending before the Court. (*See* Doc. 12.)

## II. Legal Standard

An individual may be found guilty of illegal reentry under 8 U.S.C. § 1326 if the United states can show both: (1) that he "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding[,]" and (2) thereafter, he "enter[ed], attempt[ed] to enter, or [was] at any time found in[] the United States . . . ." § 1326(a)(1)–(2). Section 1326(d), however, "permits the defendant-alien the chance to mount a collateral attack against a prior deportation order in response to an illegal reentry prosecution—but only in certain circumstances." *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010). A defendant seeking to collaterally attack a prior deportation order may not do so unless he can demonstrate that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The Tenth Circuit has held "that § 1326(d) comports with the constitutional standard for due process . . . ." *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1108 (10th Cir. 2005) (citing *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998)).

## III. Analysis

Defendant begins his argument by stating, in a footnote, that "[a]s a preliminary matter, [he] maintains that he need not satisfy the § 1326(d) framework because he was never 'removed' as a matter of law, as the [immigration judge] lacked jurisdiction over his removal proceedings." (Doc. 17 at 3, n.2.) This argument, however, is circular and ignores the fact that § 1326(d) exists specifically to regulate the manner in which defendants may "challenge the validity of the deportation order" underlying their criminal charge. 8 U.S.C. § 1326(d). Thus, all defendants

3

seeking to utilize the § 1326(d) framework are presumably arguing that they were not properly removed as a matter of law. If taking such a position means a defendant "need not satisfy the § 1326(d) framework[,]" as Defendant argues, then § 1326(d) would be rendered meaningless. The Court declines to excuse Defendant from the statutory requirements for proving his underlying removal was invalid merely because he claims his underlying removal was invalid.[1] Defendant must meet each prong of the § 1326(d) framework in order to mount a successful collateral attack on the removal order that forms the basis for the Indictment. *See Adame-Orozco*, 607 F.3d at 651.

### A. Defendant did not exhaust his administrative remedies, nor was he deprived of the opportunity for judicial review.

Defendant has not shown that he meets the first two prongs of the § 1326(d) framework—exhausting administrative remedies and being deprived of the opportunity for judicial review. Indeed, his only argument regarding these requirements is that he was not actually required to do either. (*See* Doc. 17 at 6 ("Mr. Tarango-Robles was not required to exhaust his administrative remedies or [s]eek judicial review.").) To support this proposition, Defendant cites non-binding caselaw explaining that there is an exception to the doctrine of exhaustion—which generally requires parties to exhaust opportunities for administrative review of an agency decision before seeking judicial review—when the administrative remedies themselves would be futile or void or are "infected with fundamental procedural error." (*Id.* at 7 (quoting *Winterberger v. Gen. Teamsters Auto Truck Drivers & Helpers Local Union 162*, 558 F.2d 923, 925 (9th Cir. 1977)).)

However, Defendant provides no further explanation of why an administrative appeal would have been futile or why he waived appeal during his removal proceedings. Even the cases Defendant cites to support his argument, which refer to the doctrine of exhaustion generally and

---

[1] To the extent that Defendant attempts to argue that a collateral attack on an immigration judge's *jurisdiction* is somehow different than any other collateral attack governed by § 1326(d), he does not formulate any such argument in his brief and the Court will not address it here. (*See* Doc. 17 at 3.)

4

not the specific statutory requirement in § 1326(d), are clear that the fact a party is arguing an administrative decision was erroneous or unfounded is not enough to waive the exhaustion requirement. *See, e.g.*, *Winterberger*, 558 F.2d at 925 (the "mere allegation that the administrative proceeding from which judicial relief is sought was void is insufficient to deprive a court of discretion to refuse jurisdiction of the claim pending exhaustion of available administrative remedies"); *United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Emp't Relations Bd.*, 669 F.2d 1249, 1254 (9th Cir. 1982) (the plaintiff had not "met its burden of showing that an appeal would have been useless" and "a major purpose of the exhaustion doctrine is to allow administrative agencies to correct mistakes that may have occurred in their own proceedings").

Defendant has not presented any argument as to why his proceeding was so fundamentally flawed that an administrative appeal would have been futile. Nor has he explained why, even if the immigration judge had lacked jurisdiction based on a deficient NTA, an administrative appeal and/or subsequent review by an Article III court could not have corrected the error. As such, the Court is not convinced that Defendant can be excused from meeting the requirements of §§ 1326(d)(1) and (2) simply because he alleges his removal proceedings were invalid. The Tenth Circuit has made it quite clear that a defendant seeking to collaterally attack his underlying removal proceeding must meet *each* of these three requirements. *See Adame-Orozco*, 607 F.3d at 651 ("once the government shows that the alien was deported while such an order was outstanding, the burden shifts to the defendant-alien, and it is he who must prove each of § 1326(d)'s elements to overcome the presumed legality of the earlier deportation order").

Thus, Defendant has not shown that he "exhausted any administrative remedies that may have been available to seek relief against the order[,]" nor that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review . . . ."

*See* §§ 1326(d)(1), (2). The record shows that he waived appeal during his removal proceedings. (*See* Doc 17 at 16.) *See also United States v. Chavez-Alonzo*, 431 F.3d 726, 728 (10th Cir. 2005) ("[a]n alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)" (citations omitted)). As a result, Defendant fails to meet the criteria necessary to mount a successful collateral attack on his underlying removal proceeding. Still, the Court will go on to address Defendant's arguments under the third prong of § 1326(d), because the question of what makes an underlying proceeding "fundamentally unfair" is at the heart of Defendant's motion to dismiss and a number of similar collateral attacks following the Supreme Court's recent decision regarding the adequacy of NTAs in the immigration context.

**B. *Pereira* does not render Defendant's underlying removal fundamentally unfair.**

Defendant argues that the United States Supreme Court's holding in *Pereira v. Sessions* renders his removal proceedings fundamentally unfair. *See* 138 S. Ct. 2105 (June 21, 2018). (*See also* Doc. 17 at 3–6.) The crux of his argument is that, under *Pereira*, his 2005 NTA lacked sufficient time-and-place information necessary to vest the immigration judge with jurisdiction, and the subsequent proceedings thus violated his due process rights and caused him actual prejudice. (Doc. 17 at 3–8.)

**i. Legal Standard for Fundamental Unfairness**

"An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Vargas-Ortiz*, 667 F. App'x 699, 700 (10th Cir. 2016) (quoting *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)).

Under the first requirement, violation of the defendant's due process rights, the Tenth Circuit has explained that while the due process rights of noncitizens are "minimal," *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013), it is an "undisputed proposition that a potential deportee is entitled in his deportation proceeding to procedural due process under the Fifth Amendment, designed to ensure that the proceeding is fundamentally fair." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004). "Because aliens do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (quotations omitted). For the second requirement, that the defendant show he suffered actual prejudice as a result of the alleged due process violations, the Tenth Circuit has adopted a "reasonable likelihood" test. *See Aguirre-Tello*, 353 F.3d at 1209. "[T]he standard to apply . . . is whether there is a reasonable likelihood that [the defendant] would have obtained relief from deportation" had the alleged due process errors not occurred. *Id.*

### ii. *Pereira v. Sessions*

In June 2018, the United States Supreme Court ruled that an NTA lacking specific time-and-place information did not qualify as an NTA under the statutory definition of such notices. *Pereira*, 138 S. Ct. 2110. The defendant in that case, Wescley Fonseca Pereira, was a citizen of Brazil who had entered the United States on a temporary visa and remained in the country after it expired. *Id.* at 2112. After he had been in the United States for six years, he was arrested for a traffic violation and served with a document titled "Notice to Appear" by the Department of Homeland Security (DHS). *Id.* "That putative notice charged Pereira as removable for overstaying his visa, informed him that 'removal proceedings' were being initiated against him, and provided

7

him with information about the '[c]onduct of the hearing' and the consequences for failing to appear." *Id.* However, "the notice did not specify the date and time of [the] removal hearing. Instead, it ordered him to appear before an Immigration Judge in Boston 'on <u>a date to be set</u> at <u>a time to be set</u>.'" *Id.* (citations omitted).

Approximately one year later, when Pereira had been in the United States for seven years, the immigration court attempted to serve him with more specific notice that included the date and time of the hearing, but this notice was sent to the wrong address. *Id.* As a result, Pereira never appeared and was ordered removed in absentia. *Id.* Several years later, after being in the United States for more than ten years, Pereira was arrested for another traffic violation and taken into DHS custody. *Id.* His removal proceedings were reopened, and he applied for cancellation of removal under a statutory provision that gives the United States Attorney General the "discretion to 'cancel removal' and adjust the status of certain nonpermanent residents . . . [who] meet certain enumerated criteria[.]" *Id.* at 2110. One of the criteria is that the noncitizen must have been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). However, a related rule called the "stop-time" provision provides that continuous physical presence in the United States is deemed to end "when the alien is served a notice to appear under section 1229(a) of this title." § 1229b(d)(1)(A). Section 1229(a) defines a "notice to appear" as including "[t]he time and place at which the proceedings will be held."

Pereira argued that his original NTA did not trigger the stop-time rule since it did not contain time-and-place information as explicitly required by the statute. 138 S. Ct. at 2112. The Supreme Court explained that the case presented a "narrow question." *Id.* at 2110. "If the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the

document fails to specify either the time or place of the removal proceedings, does it trigger the stop-time rule?" *Id.* Writing for the majority, Justice Sotomayor explained that the statutory language at hand was not ambiguous. *Id.* at 2114.

> By expressly referencing § 1229(a), the statute specifies where to look to find out what "notice to appear" means. Section 1229(a), in turn, clarifies that the type of notice "referred to as a 'notice to appear'" throughout the statutory section is a "written notice . . . specifying," as relevant here, "[t]he time and place at which the [removal] proceedings will be held."

*Id.* (quoting § 1229(a)(1)(G)(i)). Thus, the Court held that "based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, specifies the time and place of the removal proceedings." *Id.* (internal quotation marks and alterations omitted).

### iii. Application of *Pereira* to Jurisdiction in Removal Proceedings

Defendant argues that *Pereira* has far reaching implications for the adequacy of all NTAs in the immigration context, and as such his Indictment should be dismissed "because the underlying removal order did not comport with due process." (Doc. 17 at 1.) He argues that the 2005 removal order was "invalid because the NTA was defective by failing to state the date and time of the hearing and, consequently, the [immigration judge] had no jurisdiction to conduct removal proceedings." (*Id.* at 2.) Defendant further argues that the three additional reinstatements of the original removal order "are also invalid" as a result. (*Id.*)

"Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . ." 8 C.F.R. § 1003.14(a). "Charging document means the written instrument which initiates a proceeding before an Immigration Judge . . . includ[ing] a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of

Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13. The regulations state an NTA must include the following information:

> (1) The nature of the proceedings against the alien;
> (2) The legal authority under which the proceedings are conducted;
> (3) The acts or conduct alleged to be in violation of law;
> (4) The charges against the alien and the statutory provisions alleged to have been violated;
> (5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 CFR 1292.1;
> (6) The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear; and
> (7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.

8 C.F.R. § 1003.15(b).

Defendant's argument centers on the fact that the relevant *statute* defining an NTA, 8 U.S.C. 1229(a), additionally requires an NTA to include specific time-and-place information, a definition which formed the basis for the Supreme Court's holding in *Pereira*. (*See* Doc. 17 at 4.) "Although *Pereira* occurred in the context of the stop-time rule, its implications are far-reaching." (*Id.* at n.4.) Thus, he argues, because *Pereira* explains that an NTA lacking time-and-place information "is not a notice to appear under section 1229(a)[,]" (*see id.* at 5 (quoting *Pereira*, 138 S. Ct. at 2113) (quotation marks omitted)), "[w]here immigration officials file such a putative notice to appear, jurisdiction does *not* vest, and removal proceedings do not commence . . . ." (*Id.* at 5.) As a result, according to Defendant, "any subsequent removal is illegal." (*Id.*) He points, without citation, to the fact that "numerous [immigration judges] in various parts of the country including El Paso have begun terminating the removal proceedings of any noncitizen whose notice to appear lacks the date and time." (*Id.* at 6.)

The Government asserts that, to the contrary, Defendant's "assertion rests on a misinterpretation of *Pereira v. Sessions*." (Doc. 18 at 4.) According to the Government, an immigration judge's "authority over removal proceedings is governed by a statutory and regulatory regime, and the relevant provisions do not make an NTA that includes the date and time of the removal hearing a prerequisite to an [immigration judge's] jurisdiction." (*Id.*) The Government argues that the Supreme Court did not hold in *Pereira* that an NTA lacking date and time information is an invalid charging document for any and all purposes, but only that it is insufficient to trigger the stop-time rule. (*See id.* at 4–5.) The Government points out that the statute at issue in *Pereira* explicitly referenced the § 1229(a) statutory definition and was aimed at providing notice of the upcoming removal proceeding *to the alien*. (*See id.* 18 at 6.) On the other hand, the regulations governing immigration courts' jurisdiction do not reference § 1229(a), and "[n]othing in §1229 directs that such notice must be filed *with the immigration court* in order to vest jurisdiction[.]" (*See id.* (emphasis added).)

Since *Pereira*, numerous courts have taken up the question of whether NTAs that lack time-and-place information and are thus deficient under *Pereira* also fail to establish jurisdiction when filed with an immigration court to initiate removal proceedings. In *Matter of Bermudez-Cota*, the Board of Immigration Appeals (BIA) interpreted *Pereira* narrowly to hold that it applies only to the stop-time rule, and specifically concluded that lack of date and time specifications in an NTA do not deprive the immigration court of jurisdiction. 27 I. & N. Dec. 441, 447 (BIA 2018). According to the BIA, an NTA "that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of [§ 1229(a)], so long as a notice of hearing specifying this information is later sent to the alien." *Id.*

The Circuit Courts of Appeal that have considered this issue have reached the same conclusion. Approving of the BIA's interpretation of *Pereira* in *Bermudez-Cota*, the Sixth Circuit explained that "[w]e agree with the Board that *Pereira* is an imperfect fit in the jurisdictional context and . . . conclude that jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing, *see* 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the NTA." *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314–15 (6th Cir. 2018) (citations omitted). Further, the Sixth Circuit noted that "[i]f *Pereira's* holding applied to jurisdiction, there also would not have been jurisdiction in *Pereira* itself." *Id.* at 314.

The Ninth Circuit similarly agreed with the BIA and held that "[t]his question is governed by federal immigration regulations, which provide that jurisdiction vests in the Immigration Court when a charging document, such as a notice to appear, is filed." *Karingithi v. Whitaker*, 913 F.3d 1158, 1158 (9th Cir. 2019) (citing 8 C.F.R. §§ 1003.13, 1003.14(a)). "The regulations specify the information a notice to appear must contain; however, the time and date of removal proceedings are not specified." *Id.* at 1158–59 (citing 8 C.F.R. § 1003.15(b)). "Because the charging document in this case satisfied the regulatory requirements, we conclude the Immigration Judge ('IJ') had jurisdiction over the removal proceedings." *Id.* at 1159. The Fifth and Fourth Circuits, too, have clarified that *Pereira* applies narrowly to the cancellation of removal context and the stop-time rule. *See Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018); *United States v. Perez-Arellano*, No. 18-4301, 2018 WL 6617703, at *3 (4th Cir. Dec. 17, 2018) ("[s]imply put, *Pereira* did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction").

A court in this District has made a similar finding on the issue of *Pereira's* intersection with jurisdiction. In *Alderete-Lopez v. Whitiker*, No. CV 18-1114 JB\SCY, 2018 WL 6338420, at

12

*23–24 (D.N.M. Dec. 5, 2018), United States District Judge James O. Browning rejected an argument that an immigration judge lacked jurisdiction based on a deficient NTA in the wake of *Pereira*. Judge Browning noted that, "[a]lthough the regulations specify that an NTA shall 'where practicable' include 'the time, place and date of the initial removal hearing,' such information is not listed as a requirement to vest the immigration court with jurisdiction." *Id.* at 24 (quoting 8 C.F.R. § 1003.18; citing § 1003.14). "To the contrary, the regulations specifically provide that, if the notice to appear does not contain the information regarding the time, place and date of the removal hearing, the immigration court can provide the noncitizen with that information in a subsequent notice." *Id.* (citing 8 C.F.R. § 1003.18(b)). "Unlike the stop-time rule, the regulations governing the vesting of jurisdiction in an immigration court do not reference § 1229(a)'s 'notice to appear' definition[,]" and thus *Pereira's* "narrow holding does not require a[n] NTA to include the date and time of a noncitizen's pending removal proceeding to vest the immigration court with jurisdiction over the proceeding." *Id.* at 25.

Other district courts across the country have adopted similar reasoning to hold that an NTA lacking specific time-and-place information does not strip an immigration judge of jurisdiction and thus does not, on its own, render a removal proceeding fundamentally unfair. *See, e.g.*, *United States v. Chavez*, No. 2:17-CR-40106-01-HLT, 2018 WL 6079513, at *7 (D. Kan. Nov. 21, 2018) ("The Court cannot extend *Pereira* beyond its application to the stop-time rule. Defendant's Notice to Appear, although defective, had no effect on the Immigration Court's jurisdiction (either subject-matter or personal) and the underlying removal order is valid."); *United States v. Maldonado-Abarca*, 2018 U.S. Dist. LEXIS 219579, at *25 (D. Wyo. Oct. 31, 2018) (an NTA lacking time-and-place information that was followed by a more specific notice of hearing did not strip the immigration judge of jurisdiction pursuant to *Pereira*); *United States v. Munoz-Alvarado*,

No. CR-18-171-C, 2018 WL 4762134, at *1 (W.D. Okla. Oct. 2, 2018) (the proposition "that any time the Notice to Appear fails to include a date or time, regardless of the underlying circumstances, that Notice would be invalid and any further proceedings against the alien would have been invalid . . . simply distorts [*Pereira*] beyond recognition."); *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at *3 (W.D. Okla. Sept. 25, 2018) ("*Pereira* addresses the narrow question of whether a defective notice to appear triggers the 'stop-time rule' in determining relief under the immigration laws."). (*See also* Doc 18 at 14–16 (appendix collecting district court cases rejecting similar collateral attacks post-*Pereira*).)

No district court in the Tenth Circuit has dismissed a § 1326 indictment based on the logic advanced by Defendant in this case, though some courts in other districts have done so. (*See* Doc. 18 at 16–17 (collecting cases).) In *United States v. Virgen-Ponce*, the trial court broadly construed *Pereira* and held that "[s]ince the Notice of Appearance in this case omits information required by the statute, the Notice is deficient." 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018). *See also United States v. Soto-Mejia*, 356 F. Supp. 3d 1053, 1057 (D. Nev. 2018) ("the fundamental question that the Supreme Court was answering in *Pereira* is whether a notice must contain the time and location of the hearing to be a 'notice to appear' under Section 1229(a)"); *United States v. Quijada-Gomez*, 360 F. Supp. 3d 1084 (E.D. Wash. 2018) (8 C.F.R. § 1003.15 and related regulations were enacted only to "help facilitate the expedient resolution of removal proceedings. Thus, this regulation does not define a second class of Notice to Appear, but instead provides a list of additional pieces of information that the Service is required to provide the immigration court.").

The interpretation of *Pereira* preferred by Defendant and a minority of federal district courts suggests that an NTA lacking time-and-place information is not an NTA, is thus not a valid charging document, and thus cannot trigger an immigration court's jurisdiction. However, the

Supreme Court took great pains to categorize *Pereira* as a "narrow" holding focused only on the stop-time rule in the cancellation of removal context. *See* 138 S. Ct. at 2114. The Court agrees with the BIA, the Circuit Courts of Appeal that have addressed the issue, and the majority of federal district courts that an NTA lacking time-and-place details may be deficient under *Pereira* in the context of the stop-time rule, but it is nevertheless sufficient to vest the immigration court with jurisdiction over the proceedings.[2]

Defendant received an NTA that fully complied with the regulations governing the immigration court's jurisdiction to initiate the proceeding, and he subsequently received additional notice providing the specific details of his hearing. This notice was clearly sufficient to provide him "an opportunity to be heard at a meaningful time and in a meaningful manner"—as Defendant appeared at the hearing, accompanied by counsel, and argued against removal. *See Arambula-Medina*, 572 F.3d at 828. Though *Pereira* makes clear that the initial NTA would not be sufficient to invoke the stop-time rule if Defendant were applying for cancellation of removal, it complied with 8 C.F.R. §§ 1003.14(a) and 1003.15(b) to vest the immigration judge with jurisdiction to conduct the removal proceedings and issue the removal order.

Thus, as the immigration court had jurisdiction in the underlying proceeding, Defendant has not shown that his due process rights were violated in any way. *See Vargas-Ortiz*, 667 F. App'x at 700. Nor has Defendant shown that he suffered actual prejudice by demonstrating "a reasonable likelihood that [he] would have obtained relief from deportation" had the alleged due process errors not occurred. *See Aguirre-Tello*, 353 F.3d at 1209. Though Defendant argues that he would not

---

[2] The Court recognizes that *Pereira* created an odd situation in which an NTA that is statutorily deficient for the purpose of notifying an alien of his upcoming proceeding may still suffice to vest jurisdiction in the immigration court to conduct that proceeding. DHS may elect to begin including time-and-place information in all NTAs, in case the stop-time rule need ever be invoked. Still, *Pereira* simply does not go so far as to mandate that NTAs must include everything listed in § 1229a in order to be valid for any purpose.

have been deported "but for the [immigration judge's] error of ordering [his] removal when he lacked the authority to do so," (Doc. 17 at 7–8), the Court is not convinced by this argument. Defendant has not explained why the proceeding would have turned out differently *even if* the immigration court had complied with his overly-broad reading of *Pereira* and included the date and time of his hearing on the initial NTA, rather than in a two-part notice.

Defendant has not proved that he exhausted his administrative remedies, that he was deprived of the opportunity for judicial review, nor that the underlying removal order was fundamentally unfair. *See* §§ 1326(d)(1)–(3).

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 17) is **DENIED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**